ELMER SHAMBERG, APPELLEE, V. CITY OF LINCOLN, NEBRASKA, A MUNICIPAL CORPORATION, ET AL., APPELLANTS.
116 N. W. 2d 18

Filed July 6, 1962. No. 35191.

Ralph D. Nelson, Henry L. Holst, and Hal B. Hasselbalch, for appellants.

Ginsburg, Rosenberg & Ginsburg and Norman M. Krivosha, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

SIMMONS, C. J.

Plaintiff brought this action for a declaratory judgment, an injunction, and equitable relief. The defendants are the City of Lincoln and its officers who are charged with the enforcement of its ordinances. The action was tried in the district court and resulted in findings and a judgment for plaintiff. Defendants appeal. We find for the plaintiff on the particular issue presented and direct an injunction.

The facts involved are not in dispute.

Plaintiff is a homeowner on South Fifty-sixth Street in Lincoln. His land slopes to the east. By excavation on the rear of the land, plaintiff built a standard size tennis court. He put up the standard 10-foot-high backstops and sidestops which are near the borders of his land on the east and the south. The backstops and sidestops are of meshed wire supported by iron posts and braces.

Before erecting the court and the stops, plaintiff secured the verbal approval of the city's building inspector's office to the effect that the city did not issue building permits for tennis courts.

The particular provision involved is section 2107, of ordinance No. 5636, of the City of Lincoln, Nebraska, which provides that: "No fence shall be erected to a height to exceed six feet, * * *." The above is but a part of one sentence out of one division of one group of provisions in what the city advises us is "a long, complex ordinance."

It appears that the backstops and sidestops affected the aesthetic sensibilities of plaintiff's neighbor to the east. Apparently, because of that complaint, the city's building inspector required reduction in the height of the stops from 10 feet to 6 feet. The building inspector measured from the ground level of the court to the

top of the stops and thereby found a violation of the 6-foot limit of the ordinance. Plaintiff, measuring from the grade level in front of his property, found the height to be well within the 6-foot limit.

The city elected to enforce its ordinance by misdemeanor proceedings in municipal court. For several days it apparently threatened, if it did not actually do so, to file a separate complaint for each day that the plaintiff did not comply with its construction of the section and remove the offending 4 feet of the stops.

The trial court made extensive findings and found that plaintiff's backstops and sidestops did not constitute any violation of section 2107 of ordinance No. 5636 and enjoined the defendants from prosecuting any action or actions against the plaintiff for the recovery of penalties under the ordinances of the city.

Defendants here complain that the judgment of the trial court was in error in finding that the tennis court's backstops and sidestops had no reasonable relation to public health, welfare, or safety; in not finding section 2107 was constitutional or was unconstitutional; in not finding that the backstops and sidestops were "a fence more than six feet high"; and in finding that they did not constitute a violation of ordinance No. 5636 of the city of Lincoln.

The broad sweep of the trial court's judgment is understandable in the light of the fact that the city apparently elected to prosecute for a violation of ordinance No. 5636 without limiting or pointing to the section above-quoted. However, the issue tried and decided was that of the applicability of section 2107 to plaintiff's tennis court backstops and sidestops.

We are urged to determine questions of constitutionality and a variety of other matters. At the beginning, we are confronted with the question, are the backstops and sidestops a "fence"? The ordinance does not undertake to define the term directly, so far as we are advised, and the entire ordinance is not before us.

We held in Foote v. County of Adams, 163 Neb. 406, 80 N. W. 2d 179, that: "Courts should give to statutory language its plain and ordinary meaning."

The same rule applies to a city ordinance.

What then is the plain and ordinary meaning of the word "fence" as used in the ordinance?

The word is defined in 36A C. J. S., Fences, § 1, p. 258: "A fence is an inclosing structure, composed of any material which will present a sufficient obstruction, about a field or other space intended to prevent intrusion from without or straying from within."

It is hardly to be said that a tennis ball is something "straying from within" although the purpose of the backstops and sidestops is to keep a tennis ball within the playing area. Substantially the same definition is found in 22 Am. Jur., Fences, § 2, p. 513, and in Webster's Unabridged Dictionary (2d Ed.), p. 674.

How did the city in the ordinance construe the term so far as tennis court "backstops" are concerned? In section 209 of ordinance No. 5636 of the City of Lincoln, it provided that a building was "any structure," etc. In section 246, it provided that a structure included "backstops for tennis courts," and in the same area here involved, it provided that no building should exceed 35 feet in height. Obviously, the city in enacting the ordinance did not consider a tennis court backstop to be a fence within the meaning of the ordinance but a structure subject to the code height for a building. Just as obviously, the plaintiff has not violated that provision. The city then, in section 2605, provided that anyone violating the code was guilty of a misdemeanor, with each day the violation existed constituting a separate offense.

We have held: "The distinction between a remedial and penal statute necessarily lies in the fact that the latter is prosecuted for the sole purpose of punishment, and to deter others from offending in like manner. A remedial statute, of course, is for the purpose of adjust-

ing the rights of the parties as between themselves in respect to the wrong alleged." School District of the City of Omaha v. Adams, 147 Neb. 1060, 26 N. W. 2d 24.

We have also held: "A penalty statute must be strictly construed. It will not be applied to situations or parties not fairly or clearly within its provisions." Johnson Fruit Co. v. Story, 171 Neb. 310, 106 N. W. 2d 182.

It is not necessary to determine questions of constitutionality and other matters assigned.

We hold that plaintiff's structure is not a violation of the particular code provision here discussed and that defendants should be enjoined from enforcing or attempting to enforce the code provision against the plaintiff. The injunction should be so limited. Because of the particular language of finding and scope in the judgment, we modify the judgment of the trial court in accord with this opinion.

All costs are taxed to the defendant city.

AFFIRMED AS MODIFIED.