VILLAGE OF WINSIDE, APPELLEE, V. SCOTT JACKSON, DOING
BUSINESS AS WOODLEAF APARTMENTS, APPELLANT.

553 N.W.2d 476

Filed October 4, 1996.   No. S-94-506.

Craig H. Lane for appellant.

Jeffrey L. Hrouda for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT,
CONNOLLY, and GERRARD, JJ.

CONNOLLY, J.

We are asked to decide whether a municipality, in conformance with the Integrated Solid Waste Management Act (Act), may charge a garbage fee to persons that do not use the service. We hold that the Act does not permit the imposition of a garbage fee on a nonuser of the service and therefore reverse the Nebraska Court of Appeals' decision affirming the district court's decision.

## BACKGROUND

On October 22, 1993, the Village of Winside (Village) filed a claim against Scott Jackson, doing business as Woodleaf Apartments, in small claims court seeking $293.50 plus costs for past-due garbage bill charges incurred since October 1, 1992. In response, Jackson filed a counterclaim in the amount of $317.07 alleging that he had paid for garbage services he never received. The court entered judgment for the Village and against Jackson on the counterclaim. Jackson then appealed to the district court.

In the district court proceedings, the parties stipulated to an amendment to the Village's petition increasing the prayer for damages to $440.50. The trial was held on April 6, 1994. The evidence offered by both parties was essentially uncontested and shows as follows:

The Village enacted an ordinance charging every occupied residence and business a garbage fee. Businesses are charged $24.50 per month for this service, while residents are charged $9.25 per month. These charges are assessed regardless of whether a business or resident chooses not to use the garbage system employed by the Village.

This ordinance was enacted by the Village to comply with the Act, set forth in Neb. Rev. Stat. § 13-2001 et seq. (Cum. Supp. 1994). This Act essentially requires every county and municipality to provide or contract for facilities and systems necessary for the proper disposal of solid wastes. See § 13-2020. Rather than providing the necessary facilities and systems itself, the Village contracted with Arens Sanitation, Inc. (Arens), to provide garbage collection and disposal for the residents and businesses within the Village.

Jackson owns an apartment complex in the Village. The complex consists of four apartments and is housing for the elderly financed by the Farmers Home Administration. At all times relevant to this action, each apartment has been continuously occupied. Jackson testified that although the tenants residing therein generate garbage, they separate it for recycling. Jackson picks up this separated garbage once a week and either uses the garbage as compost on his garden or personally transports it to a recycling center. During the trial, Jackson stated that he recycles all the garbage generated at the complex with the exception of light bulbs, which he stores at his parents' residence in the Village. Having recycled trash for 26 years, Jackson testified that he is "quite passionate about it."

Both parties are in agreement that the garbage services provided by Arens are available to Jackson but that he has never utilized the services. In addition, both parties are in agreement that Jackson has not paid a garbage bill since at least November 1, 1992, and that the bill totaled $440.50 as of the time of trial.

The district court ruled that the Village ordinance assessing a garbage fee regardless of use of the services was in accordance with the Act and was within the police power of the Village. Jackson then appealed to the Court of Appeals, arguing that the ordinance exceeded the scope and authority of the Act and that the district court erred in finding that he violated the provisions of the ordinance. In a memorandum opinion filed February 26, 1996, the Court of Appeals affirmed the district court's decision, holding that the ordinance did not exceed the scope and authority of the Act and that the ordinance was a valid exercise of the Village's police power. We granted Jackson's petition for further review.

## ASSIGNMENTS OF ERROR

Jackson contends that the Court of Appeals erred (1) in not finding that the ordinance of the Village exceeded the scope and authority of the Act and (2) in failing to address his second assignment of error, wherein he claimed that the district court was incorrect in finding that he violated the Village ordi-

nance. Jackson therefore asks us to reverse the decision of the Court of Appeals and enter a judgment in his favor on his counterclaim.

## STANDARD OF REVIEW

Statutory interpretation is a matter of law in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below. *In re Interest of Brandy M. et al., ante* p. 510, 550 N.W.2d 17 (1996); *County Cork v. Nebraska Liquor Control Comm., ante* p. 456, 550 N.W.2d 913 (1996).

## ANALYSIS
### SCOPE OF AUTHORITY UNDER ACT

The primary issue raised by Jackson is whether the Village ordinance exceeds the scope and authority granted by the Act.

The Act, enacted in 1992, is designed to provide a comprehensive scheme to control the collection and disposal of solid wastes. In furtherance of this goal, the Act specifically requires each county and municipality in this state to "provide or contract for facilities and systems as necessary for the safe and sanitary disposal of solid waste generated within its solid waste jurisdiction area." § 13-2020(1). Further authority is granted to a municipality in § 13-2020(4), which provides in pertinent part:

> The governing body of a county, municipality, or agency may make all necessary rules and regulations governing the use, operation, and control of a facility or system. Such governing body may establish *just and equitable rates or charges to be paid to it for the use of such facility or system by each person whose premises are served by the facility or system*, including charges for late payments . . . .

(Emphasis supplied.)

For purposes of the Act, a "system" includes contractors utilized for the purpose of collection, transportation, and disposal of solid waste. § 13-2016.

The Act also allows a municipality to adopt ordinances or regulations governing solid wastes within its jurisdiction as

necessary to protect the public health and welfare as well as the environment. § 13-2023.

In reliance upon these statutory provisions, the Village enacted an ordinance which states in pertinent part:

> Every property owner, occupant, or lessee, who owns, occupies, inhabits, uses, or possesses any residence, house, mobile home, building or institution within the corporate limits of the Village of Winside, Nebraska shall pay a garbage fee as assessed and determined by the Village of Winside, Nebraska.

Winside Code § 4-307 (1993).

As the ordinance makes clear, a resident or business may be assessed a garbage collection fee for occupying any building within the Village. The Village has, in essence, given its citizens an offer they cannot refuse.

In determining the validity of this ordinance, we note that all ordinances are presumed to be valid. *Whitehead Oil Co. v. City of Lincoln*, 245 Neb. 660, 515 N.W.2d 390 (1994). However, the power of a municipality to enact and enforce any ordinance must be authorized by state statute. *State v. Austin*, 209 Neb. 174, 306 N.W.2d 861 (1981).

The Village essentially argues that the ordinance in question is a proper exercise of authority granted by the Act. There is little doubt that the Act allows the Village to establish and maintain a garbage collection service within its jurisdiction. The question is whether the Village may charge a flat fee to persons that do not use this service.

In construing a statute, a court must look to the statute's purpose and give to the statute a reasonable construction which best achieves that purpose, rather than a construction which would defeat it. *Goolsby v. Anderson, ante* p. 306, 549 N.W.2d 153 (1996); *Omaha Pub. Power Dist. v. Nebraska Dept. of Revenue*, 248 Neb. 518, 537 N.W.2d 312 (1995). The purpose and intent of the Legislature must be ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. *County Cork v. Nebraska Liquor Control Comm., ante* p. 456, 550 N.W.2d 913 (1996); *Baker's Supermarkets v. State*, 248 Neb. 984, 540 N.W.2d 574 (1995).

We begin by noting that a municipality is expressly empowered to establish ordinances regulating the collection and removal of garbage. See § 13-2023. This grant of authority, however, must be construed together with other portions of the Act. See *Nebraska Life & Health Ins. Guar. Assn. v. Dobias*, 247 Neb. 900, 531 N.W.2d 217 (1995). The question before us is addressed by § 13-2020(4), which specifically controls the ability of a municipality to charge for garbage services. As previously noted, this section allows a municipality to assess equitable fees for the *"use of such facility or system by each person whose premises are served by [it]."* A plain and ordinary reading of this language can lead to only one conclusion: A municipality can impose a garbage fee on only those persons that actually use the garbage services provided. To read the Act as giving a municipality the ability to assess a flat garbage fee on all residents regardless of whether they use the service would require us to read a meaning into the statute that is contrary to the plain and ordinary meaning of the terms employed in § 13-2020(4). While the Legislature is free to regulate a municipality's ability to charge garbage fees as it sees fit, it is not within the province of this court to read a meaning into a statute that is not there, or to read anything direct and plain out of a statute. *Nebraska Life & Health Ins. Guar. Assn. v. Dobias, supra*.

Our plain reading of the Act in no way removes the obligation or ability of a municipality to create a garbage removal service for its residents. Rather than employing language that expressly allows the imposition of a garbage fee on all residents, the Legislature gave municipalities the authority to levy a tax to pay for the garbage services provided. § 13-2020(5). This granting of tax power effectively eliminates any need a municipality may have to assess garbage fees on nonusers in order to defray any costs associated with the providing of such services.

In applying our reading of the Act to the present case, we note that both parties are in agreement that Jackson has not used the garbage collection service offered by the Village. As Jackson is a nonuser of this service, the Village ordinance requiring Jackson to pay a garbage fee is contrary to the plain

language of § 13-2020(4). This court has recently noted that where there is a direct conflict between an ordinance and a state statute, the statute is superior law. *Gillis v. City of Madison*, 248 Neb. 873, 540 N.W.2d 114 (1995). Because the imposition of a flat garbage fee on residents is incompatible with the Act, we hold that Winside Code § 4-307 is invalid insofar as it requires residents to pay a fee for garbage services they do not use.

### POLICE POWERS

The Village contends that the assessment of a garbage fee on Jackson is nevertheless proper as an exercise of its police powers. In support of this contention, the Village cites Neb. Rev. Stat. § 17-505 (Reissue 1991), which provides in pertinent part:

> In addition to their special powers, second-class cities and villages shall have the power to make all such ordinances, bylaws, rules, regulations and resolutions, *not inconsistent with the laws of the state*, as may be expedient for maintaining the peace, good government and welfare of the corporation, and its trade, commerce and manufactories . . . .

(Emphasis supplied.)

As a general matter, municipalities may, in the exercise of a valid police power, protect the public health through ordinances. *Village of Brady v. Melcher*, 243 Neb. 728, 502 N.W.2d 458 (1993). However, to be valid such ordinances must operate within legislative limits. *Id.*

We have addressed the authority of a municipality to regulate garbage under the auspices of its police power on previous occasions. In *Urbach v. City of Omaha*, 101 Neb. 314, 163 N.W. 307 (1917), this court upheld as a valid exercise of the municipality's police power the enactment of an ordinance making it illegal for a resident to move or haul garbage through the streets. In so holding, the court stated that " '[t]he removal and disposal of garbage, offal, and other refuse matter is recognized as a proper subject for the exercise of the power of a municipality to pass ordinances to promote the public health, comfort and safety. . . .' " *Id.* at 316, 163 N.W. at 308.

In *State v. Austin*, 209 Neb. 174, 306 N.W.2d 861 (1981), the defendant was charged with violating a city ordinance that prohibited the dumping of refuse within 3 miles of the city. This court upheld the ordinance, noting that the Legislature had granted specific authority for the city to pass ordinances regulating persons within 3 miles of the city as necessary to promote the public health and welfare.

While acknowledging the ability of a municipality to regulate garbage under the police power, provided the municipality acts within legislative limits, we have not directly examined whether this power allows a municipality to assess a garbage fee on an individual that does not use the service. Courts in other jurisdictions have concluded that the imposition of a garbage fee on a nonuser is a valid exercise of police power. See, e.g., *Stone v. Town of Mexico Beach*, 348 So. 2d 40 (Fla. App. 1977) (a town may impose a flat rate, regardless of use, for the collection and disposal of garbage); *City of Glendale v. Trondsen*, 48 Cal. 2d 93, 308 P.2d 1 (1957) (ordinance imposing service charge for garbage collection upon residents could be upheld as police measure, even though residents were required to pay charges without regard to whether they used collection service).

While insightful, these cases are not determinative of the issue before us. Unique to the present situation is this state's Act, which explicitly grants the Village the authority to create a garbage service. To state that the Village has the inherent ability to enact an ordinance charging all residents a garbage fee regardless of use is incorrect, for a municipality's police powers can operate only within legislative limits. *Village of Brady v. Melcher, supra*; *Howard v. City of Lincoln*, 243 Neb. 5, 497 N.W.2d 53 (1993). The Village's reliance on the general powers granted to it under § 17-505 is misplaced, for, as stated therein, the authority to enact rules and regulations cannot be inconsistent with any law of this state. Unlike the broad and sweeping reach of § 17-505, the Act deals specifically with the establishment of a garbage service by a municipality. To the extent there is conflict between two statutes on the same subject, the specific statute controls over the general statute. *State ex rel. Stenberg v. Murphy*, 247 Neb. 358, 527 N.W.2d

185 (1995). Accordingly, the specific dictates of the Act that allow the imposition of a garbage fee on only those residents who actually use the services prevail over the general powers enunciated in § 17-505. Thus, we conclude that the Village does not possess the authority under its police powers to charge a garbage fee on those residents who do not use the service.

## JACKSON'S COUNTERCLAIM

Remaining is the issue of Jackson's counterclaim against the Village in the amount of $317.07. As asserted by Jackson, this counterclaim reflects payment of garbage fees for services he did not use. In ruling that the Village possessed the authority to assess such a fee, the district court necessarily held against Jackson on his counterclaim. In light of our conclusion that the Village does not possess the authority to charge Jackson for services he does not use, the ruling on his counterclaim was in error. Therefore, this cause must be remanded for determination of Jackson's recovery on his counterclaim.

## CONCLUSION

For the reasons discussed above, we hold that the Nebraska Court of Appeals erred in holding that the Village ordinance assessing a mandatory garbage collection fee on all residents and businesses did not exceed the scope of the Act and was within the police powers of the Village. The Court of Appeals' decision affirming the district court's award of $440.50 to the Village is therefore reversed, and the cause is remanded to determine Jackson's recovery on his counterclaim.

REVERSED AND REMANDED.