REQUESTED BY: James S. Jansen Douglas County Attorney
In your opinion request letter dated September 10, 1997, which we received on September 12, 1997, you requested our opinion as to certain matters involving the Nebraska Public Meetings Statutes, Neb. Rev. Stat. §§ 84-1408 through 84-1414
(1994, Cum. Supp. 1996). Specifically, you are concerned about the application of the Public Meetings Statutes to the pending process whereby a vacancy on the Douglas County Board will be filled by action of the Douglas County Clerk, the Douglas County Treasurer, and yourself, as Douglas County Attorney.
In our Op. Att'y Gen. No. 88024 (March 17, 1988), we stated that we would issue formal opinions of the Attorney General to County Attorneys in Nebraska only with respect to questions involving "criminal matters" and "matters relating to the public revenue." That policy was based upon our statutory authority and the resources available to this office. We continue to adhere to that policy.
In the present instance, the questions you raised regarding the Public Meetings Statutes do not appear, on their face, to involve either criminal matters or matters relating to the public revenue. However, possible sanctions for violation of the Nebraska Public Meetings Statutes include criminal prosecution along with other types of enforcement actions. Consequently, we will offer our opinion as to the two questions which you raised, since they do involve criminal matters in a sense, and since we could be called upon to enforce the public meetings laws with respect to the appointment procedures at issue. Our conclusions stated below, therefore, reflect our enforcement policy in connection with the questions which you raised.
From the materials which you provided to us, we understand that a vacancy has been created on the Douglas County Board of Commissioners due to the resignation of one of its members. Neb. Rev. Stat. § 32-567(3) pertains to filling such vacancies, and that statute provides, as is pertinent:
Vacancies in office shall be filled as follows:
* * *
 (3) In the membership of the county board, by the county clerk, county attorney, and county treasurer,
Beyond that language in § 32-567(3), as you correctly noted, there is no particular procedure set out in that statute for the appointment process. Your questions under the Public Meetings Statutes go to the application of public meeting requirements to appointments under § 32-567(3).
You first ask, "[d]oes the group making the appointment under § 32-567(3) constitute a public body as defined by §84-1409 and therefore subject to the open meeting laws?" We believe the answer to that question is "yes," for the reasons discussed below.
Section 84-1409(1) establishes the various types of governmental entities which are subject to the Public Meetings Statutes in Nebraska. Subsection (c) of § 84-1409(1), in turn, defines a public body subject to those statutes, in part, as:
 all independent boards, commissions, bureaus, committees, councils, subunits, or any other bodies, now or hereafter created by the Constitution of Nebraska, statute, or otherwise pursuant to law,
In this case, the group making the appointment to fill the vacancy on the Douglas County Board is authorized and required to do so under the specific statutory authority of § 32-567(3). Consequently, it appears to us that the group of county officials involved is a "subunit" or "other body" created "by statute" or "otherwise pursuant to law." As such, we believe that the group is subject to the various requirements of the Public Meetings Statutes.
Our conclusion regarding your initial question is supported by several aspects of the public meeting laws. First of all, the very breadth of the listing of entities subject to the Public Meetings Statutes under § 84-1409(1) indicates that the Legislature intended that the reach of those statutes should be broad. For example, under § 84-1409(1)(g), the Public Meetings Statutes even apply to "instrumentalities exercising essentially public functions." Second, the Nebraska Supreme Court has indicated that the public meetings laws should be broadly interpreted and liberally construed to obtain the objective of openness in favor of the public. Rauert v. School District I-Rof Hall County, 251 Neb. 135, 555 N.W.2d 763 (1996); Grein v.Board of Education of the School District of Fremont,216 Neb. 158, 343 N.W.2d 718 (1984). Finally, § 84-1410, the section of the Public Meetings Statutes which establishes procedures for closed or executive sessions of public bodies, specifically states that, "[n]othing in this section [pertaining to closed sessions] shall permit a closed meeting for discussion of the appointment or election of a new member to any public body." It seems to us that the fact that the Legislature added that admonishment in the closed session provision of the Public Meetings Statutes necessarily indicates that the Legislature contemplated that the appointment of new members to public bodies should be done in conformance with the other requirements of those statutes.
We are also aware of the decision in Marks v. JudicialNominating Commission for Judge of the County Court of the 20thJudicial District, 236 Neb. 429, 461 N.W.2d 551 (1990), in which the Nebraska Supreme Court indicated that a judicial nominating commission engaged in the nomination of persons for a judgeship in Nebraska was not subject to the Public Meetings Statutes, in part, because the selection of nominees for judicial vacancies does not involve the formation of public policy. However, we believe that the situation in Marks is different from the present circumstances in that Marks involved a nomination for a judicial vacancy rather than an actual appointment to an otherwise elected position on a county board. Moreover, the major focus of the Marks opinion went to the fact that there are specific statutes dealing with judicial nominating commissions, and those statutes control over the more general Public Meetings Statutes. In the present instance, as noted above, there are no specific statutes which establish procedures for the appointment process at issue and which would control over the Public Meetings laws. Therefore, given the nature of the office at issue and dearth of any statutory procedural guidelines for the appointment process under consideration, it seems to us that the Marks case is inapposite, and that the important openness objectives of the Public Meetings Statutes control.
Your second question goes to the use of a closed or executive session in the appointment process. You ask, "[i]f the appointing persons are subject to the provisions of § 84-1409, then are they permitted to conduct a closed session for the evaluation of the merits of the candidates?" We believe that the answer to that question is "no," based upon the direct language of § 84-1410
which states that "[n]othing in this section [pertaining to closed sessions] shall permit a closed meeting for discussion of the appointment or election of a new member to any public body."
We have also enclosed a copy of our Op. Att'y Gen. No. 94035 (May 11, 1994) for your additional information. In that opinion, we indicated that discussions and deliberations by the State Board of Education in connection with the selection of a Commissioner of Education were subject to the requirements of the public meetings statutes. In addition, that opinion concluded that interviews with individual candidates for the Commissioner position were also subject to the requirements of the public meetings statutes, if a quorum of the Board was present for those interviews. However, in the latter interview situation, a brief closed session under § 84-1410 might be warranted for a candid discussion by the Board and the candidate which might potentially elicit responses injurious to the reputation of an individual.
Sincerely yours,
 DON STENBERG Attorney General
 Dale A. Comer Assistant Attorney General
Enclosure
Approved by:
Don Stenberg
Attorney General